UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VICTOR ARGENIS REA-HERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, Attorney General of the United States, et al.,<br><br>Respondents. | CASE NO. 2:25-cv-02609-TL<br><br>ORDER PROVISIONALLY GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER |

This matter is before the Court on Petitioner Victor Argenis Rea-Hernandez's emergency motion for a temporary restraining order ("TRO"). Dkt. No. 16. Petitioner seeks to bar Respondents from removing Petitioner from the Western District of Washington during the pendency of Petitioner's petition for writ of habeas corpus (Dkt. No. 1). Having reviewed the motion and the relevant record, the Court PROVISIONALLY GRANTS the motion, pending a response from Respondents.

ORDER PROVISIONALLY GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER – 1

Petitioner, a Venezuelan national, is presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he has been detained for approximately 11 months. Dkt. No. 1 at 4. Petitioner has significant medical issues, which have at times resulted in acute illness and prolonged hospitalization. *See id.* On May 12, 2025, Petitioner obtained withholding of removal to Venezuela under the Convention Against Torture. *Id.* at 6. During Petitioner's detention, Respondents have attempted to remove Petitioner to various third countries, including Mexico. *See id.* at 7; Dkt. No. 1-2 (notice of removal to Mexico) at 2. Petitioner avers that "[b]ecause [he] was kidnapped twice the last time he traveled through Mexico, he is not willing to go there." Dkt. No. 1 at 7.

On January 12, 2026, Respondents filed a notice of intent to remove, asserting that "ICE intends to remove Petitioner . . . from the United States in the near future." Dkt. No. 15 at 1.[1] Respondents advised further that "it may be necessary to first transfer Petitioner to another facility outside this jurisdiction in order to facilitate the removal process." *Id.* On January 13, 2026, Petitioner filed the instant emergency motion. Dkt. No. 16. Less than an hour after Petitioner filed his emergency motion, Respondents filed an amended notice, advising that they intend to remove Petitioner "from the United States *to Mexico* in the near future." Dkt. No. 17 at 1 (emphasis added).

Petitioner asserts in his motion that Respondents' notice(s) did not state whether Respondents had obtained travel documents and did not "discuss[] what United States location [Petitioner] might be transferred to in the interim." Dkt. No. 16 at 2. Petitioner also points out that the notice vaguely advises that he will be removed "in the near future," but does not provide

---

[1] Such notice is mandated by the Court's scheduling order, which requires 48 hours' notice—or 72 hours' notice in the event of a weekend, holiday, or date the Court is closed—"prior to any action to move or transfer any Petitioner(s) from the Western District of Washington or to remove them from the United States." Dkt. No. 4 at 2.

ORDER PROVISIONALLY GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER – 2

a more specific time frame. *Id.* Consequently, Petitioner asserts, he "cannot respond by challenging the authenticy [*sic*] of any alleged travel documents, researching whether the destination country will accept someone in his precarious state of health, or determining whether the country will, like Mexico, refuse to accept someone who is unwilling to go there." *Id.* Petitioner also asserts that, according to the federal government's own testimony in other cases, "NWIPC is the best-suited center for detainees with serious medical problems . . . ." *Id.* (citing Wang Decl. ¶ 4, *Hassan v. Bondi*, No. C25-2444 (W.D. Wash. Dec. 17, 2025), Dkt. No. 19).

Removing Petitioner from this District and this country would have significant ramifications for the pending habeas petition. The Court may grant a TRO to preserve the Court's jurisdiction and to maintain the status quo. *See A.A.R.P. v. Trump*, 605 U.S. 91, 97 (2025) (Federal courts have "the power to issue injunctive relief to prevent irreparable harm to the applicants and to preserve [] jurisdiction over the matter."); *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[T]he District Court ha[s] the power to preserve existing conditions while it . . . determine[s] its own authority to grant injunctive relief," unless the assertion of jurisdiction is frivolous.). This is particularly so when the order is necessary to prevent action that would otherwise destroy the court's jurisdiction or moot the case. *See United States v. Shipp*, 203 U.S. 563, 573 (1906).

Accordingly, the Court ORDERS as follows:

1. Plaintiff's motion for temporary restraining order (Dkt. No. 16) is PROVISIONALLY GRANTED, pending Respondents' response to the motion. This grant is solely for the purpose of maintaining the status quo so that the Court may review the merits of the motion after full briefing.

2. Respondents ARE PROHIBITED from removing Plaintiff from either the United

ORDER PROVISIONALLY GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER – 3

States or this jurisdiction, without further order of the Court.

3. Plaintiff's counsel SHALL immediately contact Respondents' counsel to provide a copy of this Order and to meet and confer on: (1) a briefing schedule for the motion for TRO; and (2) whether Respondents will agree to a stipulated order to not remove Plaintiff during the pendency of this action.

4. If the Parties can agree on a briefing schedule, they SHALL file a stipulated proposed briefing schedule with the Court **within five days** of this Order, along with any other stipulations the Parties may agree on for the pendency of this case. If the Parties cannot reach agreement on a briefing schedule, then Respondents SHALL respond to the motion for TRO pursuant to the schedule set by Local Civil Rule 65, once notice is accomplished.

Dated this 13th day of January, 2026.

Tana Lin
United States District Judge